12549

CAROLINA REO MOTOR CO. v. MOORER ET AL.

(145 S. E., 6)

*Attorney General John M. Daniel,* and *Assistant Attorney Generals Cordie Page,* and *J. Ivey Humphrey,* for appellants,

*Messrs. John E. Edens,* and *C. S. Monteith,* for respondent,

December 20, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought by the plaintiff, Carolina Reo Motor Company, a corporation engaged in selling automobiles in the City of Columbia, against the members of the State Highway Commission, the Chief Highway Commissioner, and the Director of Motor Vehicle License Division of the State Highway Department. The object of

the action was to obtain a writ of mandamus to require the defendants to accept a fee tendered by the motor company and to issue therefor a dealer's license for the selling of automobiles, together with extra plates.

On the verified petition of plaintiff, Judge W. H. Townsend, on December 16, 1927, issued a rule requiring the defendants to show cause before him, at the time and place therein stated, why the writ of mandamus as prayed for should not be issued. The defendants made return and answer, denying each and every material allegation of the petition not specifically admitted, and by paragraph 7 alleged: "That the Relator, Carolina Reo Motor Company, handles and sells *two* different makes of cars, to wit, (1) Model 'A' named and designated as Reo, in five different types and styles, to wit, a five passenger brougham; two passenger roadster; five passenger sedan; four passenger four coupe; two passenger two coupe; (2) Model 'B' named and designated as Wolverine in three different types and styles, to wit, five passenger two door brougham; two passenger cabriolet; five passenger sedan; that the model named and designated as Wolverine carries the name 'Wolverine' on its name plate and the model named and designated as Reo carries the name 'Reo' on its name plate; that the models 'A' and 'B' known as Reo and Wolverine in their various types and styles are different makes of cars as contemplated in Act No. 203, page 370 of the Acts of 1927, entitled 'An Act Relating to the payment of Annual License Fees by Dealers in Motor Vehicles, and the use of Motor Vehicles owned by Dealers,' and are known to Respondents as such."

The plaintiff, replying to the return, pleaded in part: "That with reference to the allegations set forth in paragraph 7 of the Return your Realtor alleges that in addition to the models therein set forth the Reo Motor Car Company manufactures the trucks which are advertised under the name of 'Speed Wagon, Jr.' which is the same as the light 6 automobile, and a master speed wagon which is a heavy 6

Reo motor vehicle, and other trucks each of which have a name for the purpose of distinguishing them from each other and for advertising purposes. That all of said models are set forth in the contracts between the Reo Motor Car Company and your Relator, which is hereto attached and made a part of this reply, and also the advertising matter of the Reo Motor Car Company for the month of December which is hereto attached and made a part of this reply. That with reference to the allegations set forth in paragraph 7 to the effect that the various types or different makes of automobiles as contemplated by Act 203, page 370, Acts of 1927, your Realtor specifically denies that such Act was intended to require dealers in automobiles to pay a separate license fee for the different models handled by each dealer, and on the contrary alleges that the word 'make' as used in such Act contemplated the products of one separate manufacturer, as the Reo Motor Vehicles, and that such interpretation has been placed upon this word by the automobile trade throughout the world and by the public generally."

The matter was heard before Judge Townsend at chambers; and, after taking testimony in the case and hearing arguments of counsel, he made the following order granting the prayer of the petition:

"On hearing the Return to the Rule to Show Cause issued by me on the 16th inst., I am of the opinion that under the Act No. 203, 25 April, 1927 (35 Statutes at Large, p. 370) the license required to be paid by dealers in motor vehicles in this State, is $25.00 for the first make of vehicles, and additional license fee of $20.00 for each other make of vehicle sold by such dealer. A dealer is one who buys motor vehicles made or produced by another to sell them again. *Norris v. Comm.*, 27 Pa., 495. In speaking of vehicles of different 'Makes' the statute has reference to vehicles produced by different 'Makers' or manufacturers. *Weaver v. State*, 89 Ga., 639, 15 S. E., 840; *Alexander v. State*, 109 Ga., 805, 35 S. E., 271.

"I find from the evidence, applying the above rule of construction, that the motor vehicle manufactured by the Reo Motor Car Company, and designated by them as 'Flying Cloud,' 'Wolverine' and 'Speed Wagon' are all of one and the same 'Make' within the meaning of the statute; and that there is nothing due to the State by the plaintiff on its license fees for 1927, and that the amount tendered by it is the only amount due by it for the license and plates applied for for the year 1928. It is therefore, ordered, adjudged and decreed, that the respondents do accept the $73.00 tendered by the plaintiff, and do issue to the plaintiff the license and plates applied for—as prayed in the Petition herein; and that a Writ of Mandamus issue accordingly."

The defendants appeal to this Court and impute error to the Circuit Judge in holding that by the word "Make" of motor vehicles the statute has reference to motor vehicles produced by different "Makers" or manufacturers, whereas he should have held that it has reference to the name stamped on the name plate of the vehicle and under which it is sold.

This action involves the construction of an act of the Legislature passed at its 1927 session (35 Stat., 370), entitled "An Act relating to the payment of annual license fees by dealers in motor vehicles, and the use of motor vehicles owned by dealers." Section 1 of the act provides that "every dealer in motor vehicles in this State shall pay to the State Highway Department in lieu of all other State, municipal and County licenses, an annual License fee of Twenty-five ($25.00) Dollars, * * * for the first make of vehicles, and an additional license fee of Twenty ($20.00) Dollars for each other make of motor vehicle sold by such dealer * * *"

The appeal presents the following question: Will one license permit a dealer to sell all motor vehicles built by the same manufacturer, or is a dealer handling motor vehicles made by the same manufacturer, but in different types and styles and with different names stamped on the name plate,

required to take out a dealer's license for each motor vehicle carrying a different name so stamped?

The answer to this question, as indicated, involves the construction of the statute, or more particularly the word "Make" as used therein. There is no decision of our Court that will aid us in reaching a conclusion, as this question is before the Court for the first time. The few cases cited from other jurisdictions have only a slight bearing on the issue, since they arose under statutes different from ours in essential particulars.

After a careful study of the matter, however, we are inclined to the view of the Circuit Judge, that the statute has reference to vehicles produced by different manufacturers and not to the different models, styles, etc., of the products of a single manufacturer. We are largely led to this conclusion by the conditions surrounding the automobile business from the time the first act, that of 1917 (30 St. at Large, p. 323, § 9), levying a license tax on automobile dealers, was passed. At that time each manufacturer of automobiles produced, as a general rule, only one model and one weight of car, making it necessary for the dealer, in order to supply the general trade, to handle the products of different manufacturers. The Legislature, with these facts in mind, evidently intended, by the use of the word "Make" in the 1917 statute, to require the dealer to pay a license fee on the products of each manufacturer sold by him.

In the years immediately following the passage of the 1917 act, however, notable changes took place in the manufacture of motor vehicles. Individual manufacturers began and continued to make various types and models of cars, designating them, for trade purposes, by different names, thus enabling a dealer to furnish the general trade through the products of a single manufacturer. While the Legislature had knowledge of these changes, it did not see fit to so alter the statute levying the tax as to indicate a change of legislative intent in the use of the word "Make" as used

in the original statute, but practically adopted the language of the 1917 act in subsequent acts, including that of 1927.

Since, therefore, it is clear that in the original act (1917) the Legislature employed the word "Make" as meaning the products of different manufacturers, and that it has not seen fit, in subsequent acts, under changed conditions, to make such change in the law as would show a different intention or construction, we hold that the word "Make," as used in the 1927 statute, means the products of different manufacturers and not the different types or models produced by the same manufacturer; the different names by which the cars of a single manufacturer are designated, and sometimes stamped on the name plate, are nothing more than trade-names and are not decisive of the meaning of the word "Make" as used in the act.

The testimony in the case at bar is undisputed that the "Reo" and "Wolverine" automobiles are the products of the same manufacturer. It follows that under our construction of the statute the conclusion of the Circuit Judge was correct.

The order appealed from is affirmed.

Mr. Chief Justice Watts, and Messrs. Justices Cothran, Blease and Carter concur.

Mr. Justice Blease (concurring): In addition to the sound reasoning of Mr. Justice Stabler for the conclusion reached by him, I think the order of Judge Townsend should be sustained on the principle, applicable here, that, where there is substantial doubt as to the construction of a legislative enactment with respect to a tax or license, such doubt must be resolved against the government *(Smith v. State Highway Commission,* 138 S. C., 374, 136 S. E., 487, and cases there cited). The language of the act under consideration, and the history of the legislation, cause, in my opinion, serious doubt as to the real intent of the Legislature.